IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a <br> BLACKBIRD TECHNOLOGIES, <br><br> Plaintiff, <br><br> v. <br><br> TIMEX GROUP USA, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 16-686-GMS <br> ) <br> ) <br> ) <br> ) <br> ) |

**TIMEX GROUP USA, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)**

Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jcastellano@shawkeller.com
arussell@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
John R. Horvack, Jr.
John L. Cordani Jr.
CARMODY TORRANCE SANDAK &
 HENNESSEY LLP
195 Church Street, 18th Floor
New Haven, CT 06509
(203) 784-3199

Dated: November 29, 2016

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................... 1

II. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ......................................................................................... 2

III. SUMMARY OF THE ARGUMENT ......................................................... 2

IV. CONCISE STATEMENT OF THE FACTS .............................................. 3

V. ARGUMENT .............................................................................................. 5

    A. Legal Standards ............................................................................... 5

    B. Background on 35 U.S.C. § 101 ...................................................... 6

    C. Step One: Claim 6 of the '212 Patent and claim 5 of the '608 Patent are directed to the abstract idea of computing distance-traveled, stride length, and/or stride rate with a mathematical algorithm ......................................................................................... 9

    D. Step Two: The additional elements of claim 6 of the '212 Patent and claim 5 of the '608 Patent do not transform the nature of the claim to a patent eligible application .................................................. 10

VI. CONCLUSION ........................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs Of Texas, LLC v. DirecTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) .................................................................................. 1, 11

*Alice Corp. Pry. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) .............................................................................................. 1, 6, 12

*Bilski v. Kappos*,
561 U.S. 593 (2010) ................................................................................................... 5

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) .................................................................................. 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ............................................................................. 1, 5, 9, 10

*Diamond v. Diehr*,
450 U.S. 175 (1981) ................................................................................................... 6

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) .................................................................................. 10

*Eid v. Thompson*,
740 F.3d 118 (3d Cir. 2014) ....................................................................................... 5

*Electric Power Group LLC v. Alstom, S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .................................................................................. 8, 9

*Everglades Game Technologies, LLC v. Supercell, Inc.*,
2015 WL 4999654 (D. Del. Aug. 21, 2015) .......................................................... 1, 5, 11, 12

*In re TLI Communications LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) .................................................................................. passim

*Mayo Collaborative Services v. Prometheus Labs, Inc.*,
132 S. Ct. 1289 (2012) ............................................................................................... 1, 6, 7

*OIP Tech., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) .................................................................................. 5

*Parker v. Flook*,
437 U.S. 584 (1978) ................................................................................................... 1, 7, 11

*TDE Pet. Data Solutions, Inc. v. AKM Enterprise, Inc.*,
2016 WL 4271975 (Fed. Cir. Aug. 15, 2016).............................................................. 8, 9

*Tenon & Groove LLC v.Plusgrade S.E.C.*,
2015 WL 1133213 (D. Del. Mar. 11, 2015).................................................................. 9

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)..................................................................................... 5, 11

**Statues**

35 U.S.C. § 101............................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 2, 12

I.      **INTRODUCTION**

In 1978, the Supreme Court found a patent claim invalid under 35 U.S.C. § 101 where the discovery was a new mathematical algorithm (a type of abstract idea) implemented in a process involving temperature measurement to adjust alarm limits in catalytic converters. *Parker v. Flook*, 437 U.S. 584, 585 (1978). The "abstract idea" analysis illustrated in *Parker* was recently reaffirmed by the Supreme Court in *Mayo Collaborative Services v. Prometheus Labs, Inc.*, 132 S. Ct. 1289 (2012) and *Alice Corp. Pry. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). Since *Mayo* and *Alice*, courts across the country have granted motions to dismiss where the allegedly infringed patent was improperly directed to an abstract idea under 35 U.S.C. § 101. *See In re TLI Communications LLC Patent Litig.*, 823 F.3d 607, 609 (Fed. Cir. 2016); *Affinity Labs Of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *Everglades Game Technologies, LLC v. Supercell, Inc.*, 2015 WL 4999654, at *3 (D. Del. Aug. 21, 2015).

Like the patent in *Parker*, Blackbird Tech LLC's ("Blackbird") two asserted patent claims are directed to an allegedly new algorithm implemented on an existing device. Specifically, the patents are directed to an algorithm, which when applied to existing pedometers employing admittedly known step-counters, transmitters, receivers, and data processors, more accurately calculates distance traveled. Blackbird's patent claims are thus no different than the claim on the improved algorithm for calculating alarm limits based on temperature data in conventional catalytic converters in *Parker*. For this reason, more fully discussed below, Blackbird's Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

II.    **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS**

On August 9, 2016, Blackbird filed this suit against Timex Group USA, Inc. ("Timex"), alleging infringement of U.S. Patent No. 6,434,212 (the "'212 Patent"). Blackbird sued at least six others at the same time, including Fitbit, AliphCom, Sony, TomTom, Wahoo Fitness, and Garmin International. (D. Del. Docket Nos. 16-683 through 16-689). Blackbird's complaint asserted infringement of only claim 6 of the '212 Patent. (Compl. ¶ 17, 28). Timex moved to dismiss Blackbird's complaint under Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101 on October 20, 2016.

In response, Blackbird filed the amended complaint on November 14, 2016. (D.I. 14). For purposes of this motion, the only substantial difference between the complaint and the amended complaint is that Blackbird added allegations of infringement of claim 5 of U.S. Patent No. 6,175,608 (the "'608 Patent"). The '608 Patent and the '212 Patent issued from related patent application and share the same specification.[1] Timex now moves to dismiss Blackbird's amended complaint under Fed. R. Civ. P. 12(b)(6).

III.    **SUMMARY OF THE ARGUMENT**

Blackbird's Complaint should be dismissed for failing to state a claim upon which relief can be granted because claim 6 of the '212 Patent and claim 5 of the '608 Patent are invalid under 35 U.S.C. § 101 for the following reasons:

1.    Claim 6 of the '212 Patent and claim 5 of the '608 Patent are directed to a patent ineligible abstract idea, namely a mathematical algorithm for computing the distance traveled by a person and/or the person's stride rates and lengths.

---

[1] For purposes of simplicity, citations to the specification of the '212 and '608 Patent in this memorandum will be made with reference to the columns and lines as they appear in the '212 Patent.

      2.      The additional elements of claim 6 and claim 5 are all conventional and well-known elements that are included in the claim merely to implement the patent ineligible algorithm, and thus, do not transform the nature of the claims into a patent-eligible application.

## IV.    CONCISE STATEMENT OF THE FACTS

Blackbird only identifies claim 6 of the '212 Patent and claim 5 of the '608 Patent as allegedly infringed, and only attempts to tie each element of claim 6 and claim 5 to the accused products. Claim 6 of the '212 Patent reads as follows:

> 6.    A pedometer comprising:
>
> a step counter;
>
> a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal;
>
> a receiver mountable on a user body portion to receive the step count signal transmitted from the transmitter; and
>
> a data processor programmed to calculate a distance traveled by multiplying a number of steps counted by a stride length that varies according to a rate at which steps are taken, and further programmed to derive an actual stride length from a range of stride lengths calculated from a range of corresponding stride rates.

Claim 6 thus requires four elements: a step counter, a transmitter, a receiver, and a data processor as claimed. The claimed structural elements are admittedly not new according to the '212 Patent.[2] Instead, it discloses that pedometers and step counters were well known in the art. (*See, e.g.,* '212 Patent, col. 1 lines 18-19, 41, 47-49, 60). Moreover, mounting the step counter/transmitter and the receiver/processor on different parts of the body, for example on a leg and wrist, respectively, was admittedly well known in the art. (*See, e.g.*, '212 Patent, col. 1,

---

[2] Timex does not believe that there are any claim construction issues that are material to the § 101 invalidity analysis. But to the extent Blackbird claims that there are, Timex reserves the right to respond in its Reply Brief.

lines 20-28, discussing U.S. Pat. No. 4,371,945). Thus, the '212 Patent does not claim to have invented step counters, transmitters, receivers, data processors, or their respective locations.

Instead, the alleged advancement is a program that "calculates a distance walked or run based on an algorithm that converts a base stride length and a base stride rate to an actual stride length for use in calculating the distance travelled." ('212 Patent, col. 1, lines 12-17). The mathematical algorithm is based on the idea that stride length is related to stride rate. The mathematical algorithm is disclosed at column 2, lines 33 through 39 of the '212 Patent. Thus, the '212 Patent teaches a way of calculating distance traveled for existing pedometers.

Despite this, claim 6 does not require that the calculated distance be put to *any* end – not even displaying the calculated value to the user. Instead, claim 6 simply concludes with the data processor (1) calculating the distance traveled and (2) devising the actual stride length.

Claim 5 of the '608 Patent reads as follows:

5. A pedometer comprising:

  a step counter;

  a transmitter in communication with the step counter to generate a step count signal corresponding to each step and transmit the step count signal; and

  a receiver mountable on a user body portion to receive the step count signal transmitted from the transmitter; and

  a data processor programmed to use the step count signal to calculate a stride rate and a stride length from a plurality of walks or runs each over a known distance to generate a range of corresponding strides rates and stride lengths, and in subsequent walks or runs, calculate an actual stride rate from the number of strides counted by the step counter over a unit of time, compare the actual stride rate with the range of corresponding generated stride rates and stride lengths, and therefrom, calculate an actual stride length to be used in calculating an actual distance traveled.

Comparing claim 5 of the '608 Patent to claim 6 of the '212 Patent above, it is clear that the only difference between the claims (which is minor, if it exists at all in substance) relates to

the specifics of the algorithm used to perform the calculation. The following legal discussion will demonstrate that algorithms used to make computations, such as of distance walked or stride rate and length, are not patentable subject matter under 35 U.S.C. § 101. The question is whether the added limitations of the claim, apart from the calculation or algorithm, impart patentability. On this point, the two claims are identical. Therefore, the two asserted claims can be treated interchangeably for purposes of the 35 U.S.C. § 101 analysis discussed below.

V. **ARGUMENT**

    A. **Legal Standards**

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014). The question of whether the asserted claims of a patent are directed to eligible subject matter under 35 U.S.C. § 101 is a question of law. *OIP Tech., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). Patent eligibility under 35 U.S.C. § 101 is a "threshold" issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Thus, when a patent's claims are directed to ineligible subject matter, the Federal Circuit has "repeatedly sanctioned a district court's decision to dispose of them on the pleadings." *OIP*, 788 F.3d at 1365 (Mayer, J. concurring) (collecting cases); *see also, e.g., Content Extraction*, 776 F.3d at 1346; *TLI*, 823 F.3d at 610; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014). "Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted patent litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents." *OIP*, 788 F.3d at 1364 (Mayer, J. concurring); *Everglades*, 2015 WL 4999654, at *3 ("it is not uncommon for courts to rule on § 101 motions at the pleading stage").

**B.     Background on 35 U.S.C. § 101**

The Patent Act provides that a patent may be obtained only for a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "The [Supreme] Court has long held that this provision contains an important implicit exception. Laws of nature, natural phenomena, and abstract ideas" are not patentable. *Mayo*, 132 S. Ct. at 1293. "Einstein could not patent his celebrated law that $E=mc^2$; nor could Newton have patented the law of gravity. Such discoveries are manifestations of nature, free to all men and reserved exclusively to none." *Id.* "[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work. And monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Id.* (internal citation omitted). Instead, the patent must claim an "application[] of such concepts to a new and useful end" for them to be patentable. *Alice*, 134 S. Ct. at 2354. In other words, there must be an "inventive concept" above and beyond the abstract idea or law of nature. *Id.* at 2355.

There is a fundamental difference between creating a novel and useful device that implements a mathematical formula, and creating a mathematical formula for implementation by an existing device. In the context of 35 U.S.C. § 101, the difference is dispositive. The first scenario is governed by *Diamond v. Diehr*, 450 U.S. 175 (1981) and patentable, while the second is governed by *Parker* and not patentable. The Supreme Court recently explained these fundamental differences in *Mayo*. In short, "[w]hile a scientific truth, or the mathematical expression of it, is not a patentable invention, a novel and useful structure created with the aid of knowledge of scientific truth may be." *Mayo*, 132 S. Ct. at 1294

In *Mayo*, for example, the invention was for a method of optimizing the amount of a drug administered to a patient that involved steps of administering test amounts of the drug, measuring certain chemical parameters, and making adjustments based on the results. *Mayo*, 132 S. Ct. at 1295. However, at its essence, the patent impermissibly claimed a law of nature, namely "relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a thiopurine drug will prove ineffective or cause harm." *Id.* at 1296. The Court invalidated the patent after it considered the additional steps of the claim, but found that they just related to well-known, conventional steps in the course of simply applying the law of nature that had been discovered. *Id.* at 1297-98.

The facts of *Parker* are also particularly instructive. "An 'alarm limit' [much like distance-traveled for this case] is a number. During catalytic conversion processes, operating conditions such as temperature, pressure, and flow rates are constantly monitored. When any of these 'process variables' exceeds a predetermined 'alarm limit,' an alarm may signal the presence of an abnormal condition indicating either inefficiency or perhaps danger." *Parker*, 437 U.S. at 585. Flook's "patent application describes a method of updating alarm limits. In essence, the method consists of three steps: an initial step which merely measures the present value of the process variable (*e. g.*, the temperature); an intermediate step which uses an algorithm to calculate an updated alarm-limit value; and a final step in which the actual alarm limit is adjusted to the updated value." *Id.* The question was whether the discovery of this algorithm for calculating improved alarm limits makes an "otherwise conventional" claim patentable. *Id.* at 588. The Court held that it did not, just as how "the Pythagorean theorem would not have been patentable, or partially patentable, because a patent application contained a final step indicating that the formula, when solved, could be usefully applied to existing surveying techniques." *Id.* at

590. "Chemical processes involved in catalytic conversion of hydrocarbons are well known, as are the practice of monitoring the chemical process variables, the use of alarm limits to trigger alarms, the notion that alarm limit values must be recomputed and readjusted, and the use of computers for 'automatic monitoring-alarming.'" *Id.* at 594. The invention was unpatentable because Flook's "application simply provides a new and presumably better method for calculating alarm limit values." *Id.* at 594-95.

Consistent with *Parker*, Federal Circuit precedent confirms that the *Alice* analysis extends beyond pure software and business method patents. Thus, for example, the Federal Circuit has invalidated on § 101 grounds a patent directed to "systems and methods for performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results" and a patent directed to "processing sensor data on an oil well drill." *Electric Power Group LLC v. Alstom, S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016); *TDE Pet. Data Solutions, Inc. v. AKM Enterprise, Inc.*, 2016 WL 4271975, at *1 (Fed. Cir. Aug. 15, 2016). These cases establish instances of § 101 ineligibility in analogous situations involving data collection and analysis in industrial or, at least physical, settings, such as with catalytic converters, electric power grids, oil wells, and, in this case, a pedometer.

"Under the now familiar two-part test described by the Supreme Court in *Alice,* [a court] must first determine whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. If so, [the court] must then consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *TLI*, 823 F.3d at 611.

8

### C. Step One: Claim 6 of the '212 Patent and claim 5 of the '608 Patent are directed to the abstract idea of computing distance-traveled, stride length, and/or stride rate with a mathematical algorithm

The two asserted claims are directed to computing the distance a person has walked or run, stride length, and/or stride rate using data collected from a step-counter. But collecting and performing computations on data are patent-ineligible abstract ideas. *See, e.g., Electric Power*, 830 F.3d at 1354 ("gathering and analyzing information of a specified content" is an ineligible abstract idea); *TDE*, 2016 WL 4271975, at *2 ("claim 1 is the sort of data gathering and processing claim that is directed to an abstract idea under step one of the *Alice* analysis"); *Content Extraction*, 776 F.3d at 1347 ("we agree with the district court that the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory"); *TLI*, 823 F.3d at 613 ("the claims, as noted, are simply directed to the abstract idea of classifying and storing digital images in an organized manner").

Notably, the '212 Patent and '608 Patent compute the distance a person has walked or run using an allegedly new[3] "algorithm" just like the algorithm used in *Parker* and the foregoing Federal Circuit precedent. ('212 Patent, col. 1, lines 12-17). The raw data input is the same as it had always been using conventional step-counters, just as how the raw data of temperature, pressure, and flow rates in *Parker*, the chemical levels in *Mayo*, and the data in *Electric Power* and *TDE* were measured in conventional ways. The asserted patents' invention is simply based in the mathematical computations done using this raw data to allegedly better approximate distance traveled, stride rate, and/or stride length. This is an abstract idea, and it is not patentable.

---

[3] Notably, the patent's allegation that its algorithm is new and different from the algorithms in prior art pedometers does not alter the conclusion that the claim is directed to an abstract idea. *Tenon & Groove LLC v. Plusgrade S.E.C.*, 2015 WL 1133213, at *3 (D. Del. Mar. 11, 2015) (abstract ideas are patent ineligible even if they are novel ones).

*See Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible. If a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory.").

Additionally, after the distance traveled is calculated, neither claim 6 of the '212 nor claim 5 of the '608 patent requires that the information be put to *any* end – let alone a "new and useful" one. The claim simply directs the data processor (1) to calculate a "distance traveled," "stride rates" and/or "stride lengths" and (2) to derive an "actual stride length" and/or "actual stride rate." Significantly, the claims do not require that any of these values (*e.g.*, distance traveled, actual stride length, or actual stride rate) be put to any useful purpose.

For these reasons, claim 6 of the '212 Patent and claim 5 of the '608 Patent are directed to an abstract idea, and the Court should proceed to evaluate the claim under *Alice's* second step.

> D. **Step Two: The additional elements of claim 6 of the '212 Patent and claim 5 of the '608 Patent do not transform the nature of the claim to a patent eligible application**

Beyond the abstract idea at its core, the additional elements of claim 6 of the '212 Patent and claim 5 of the '608 Patent are: a step-counter, a transmitter, a receiver, and data processor. However, these elements were well-known and conventional, and admittedly so as described in the Patents themselves. (*See, e.g.*, '212 Patent, col. 1, lines 20-28, discussing U.S. Pat. No. 4,371,945). The step-counter is just like the devices that measured temperature, pressure, and flow rates in *Parker*, the conventional chemical analysis in *Mayo*, and the sensors and data gathering in *Electric Power* and *TDE*. *See also Content Extraction*, 776 F.3d at 1348 ("claims merely recite the use of this existing scanning and processing technology to recognize and store

data from specific data fields such as amounts, addresses, and dates"). Gathering data for use in the algorithm through conventional means, as in claim 6 of the '212 Patent and claim 5 of the '608 Patent, is insufficient to confer patent eligibility.

Second, using radio frequency transmitters and receivers to collect data does not transform the claim. Controlling precedent establishes that the use of "routine functions, such as transmitting and receiving signals, to implement the underlying idea" does not transform the claim. *Affinity Labs*, 838 F.3d at 1262; *see also Ultramercial*, 772 F.3d at 716 (use of a "ubiquitous information-transmitting medium" does not transform the claim); *TLI*, 823 F.3d at 613 ("the problem facing the inventor was not … how to transmit images via a cellular network").

Indeed, here, the asserted Patents admit that it was known in the industry to "transmit[] [data] by VHF waves" from a leg-mounted unit to a wrist-mounted unit in the pedometer. ('212 Patent, col. 1, lines 24-27). The inventors of the asserted Patents did not encounter or solve a problem of how to get step counter data from one unit (*e.g.,* a leg-unit) to another unit (*e.g.,* a wrist-unit). These elements are just the conventional means by which the asserted claims implement its allegedly novel algorithm. *See Everglades*, 2015 WL 4999654 at *4 ("The recitation of well-understood, routine, conventional activities, previously known to the industry, however, is insufficient to transform the claimed abstract idea into a patent-eligible application.")

Finally, it is beyond dispute that implementing the algorithm on a "data processor" does not transform the claim and render it patent eligible. Even in the 1970's, *Parker* rejected the implementation of an algorithm on a computer as being sufficient to confer patentability. *See Parker*, 437 U.S. at 594. This holding was reaffirmed in *Alice*, where the Supreme Court rejected the notion that the added element of a "data processing system" even with a "communications

11

controller and a data storage unit" would confer patentability on an otherwise abstract idea. *Alice*, 134 S. Ct. at 2360; *see also TLI*, 823 F.3d at 613 (finding that "a control unit fail[s] to add an inventive concept sufficient to bring an abstract idea into the realm of patentability"); *Everglades*, 2015 WL 4999654 at *5 ("certainly Everglades cannot argue that the use of a 'computer processor' is somehow inventive in this particular context"). Thus, the data processor element of the asserted claims does not transform the claim to patent eligible subject matter.

In summary, claim 6 of the '212 Patent and claim 5 of the '608 Patent do not contain an "inventive concept" that transforms the abstract idea of computing distance traveled into patent-eligible subject matter. The asserted claims thus fails the threshold test of patentability under 35 U.S.C. § 101.

## VI. CONCLUSION

For the foregoing reasons, Blackbird's Amended Complaint should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Jeffrey T. Castellano* |
|  | Jeffrey T. Castellano (No. 4837) |
|  | Andrew E. Russell (No. 5382) |
|  | SHAW KELLER LLP |
|  | 300 Delaware Ave., Suite 1120 |
|  | Wilmington, DE 19801 |
| OF COUNSEL: | (302) 298-0700 |
| John R. Horvack, Jr. | jcastellano@shawkeller.com |
| John L. Cordani Jr. | arussell@shawkeller.com |
| CARMODY TORRANCE SANDAK & | *Attorneys for Defendant* |
|   HENNESSEY LLP |  |
| 195 Church Street, 18th Floor |  |
| New Haven, CT 06509 |  |
| (203) 784-3199 |  |

Dated: November 29, 2016